UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Susan Belmont, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Homes of Opportunity, Inc. and Lawrence A. Maniaci,<br><br>Defendants. | Case No. _____<br><br>Hon. _____ |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff Susan Belmont, by and through her attorneys, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1. This case is brought under the Fair Labor Standards Act ("FLSA") for a failure to pay overtime.

2. Plaintiff worked for Defendant Home of Opportunity, Inc. ("HOOINC") during the relevant time as a Residential Service Manager at the Maxlow home, which is one of Defendants' nearly thirty residential homes in Oakland, Macomb, Wayne County, Michigan.

3. Defendants employ Residential Service Managers both to perform

1

direct care of the residents of a home that houses between one to six residents each, and also to supervise the home's staff, coordinate the residents' programmatic and medical appointments, and serve as a liaison between Defendants and the residents' families, guardians, educators, and treatment providers.

4. At all times, Plaintiff was paid according to an hourly rate for hours reported, up to forty hours per week.

5. Plaintiff regularly worked eight to fifteen scheduled hours in excess of 40 hours per week, and Defendants at all times knew that Plaintiff was scheduled to work and then did work these hours.

6. Defendant knowingly and willfully failed to compensate Plaintiff for the hours she worked above 40 hours in a work week.

7. Defendant routinely and consciously kept its residential homes understaffed and expected its "Residential Service Managers" like Plaintiff to work overtime without compensation in order to reduce its operational costs.

8. Accordingly, Plaintiff, on her own behalf and on behalf of all those similarly situated, seeks to recover her overtime pay, based on a time-and-a-half calculation, earned beginning three years back from the commencement of this lawsuit.

**JURISDICTION AND VENUE**

9. Plaintiff Susan Belmont is an individual residing in the City of

Madison Heights, County of Oakland, Michigan.

10. Defendant Homes of Opportunity, Inc. ("HOOINC") is incorporated in the State of Michigan, with its principal place of business in the City of St. Clair Shores, County of Macomb, Michigan.

11. HOOINC at all relevant times is an enterprise primarily "engaged in the care of the sick, the aged, or the mentally ill or defective who reside on its premises" as defined by the FLSA, 29 U.S.C. §203(s)(1)(B).

12. Defendant Lawrence A. Maniaci is, and was at all relevant times, a principal decision maker of HOOINC, and resides in the City of Fraser, County of Macomb, Michigan.

13. At all relevant times, Maniaci acted directly in HOOINC's interest with respect to Plaintiff, and all similarly situated current and former employees, and exercised day-to-day operational control over significant business functions, including the policies and practices affecting employee pay, employee time sheets, and conditions of employment.

14. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), and the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq*.

15. All parties are residents of this District; therefore, venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

16. Belmont has been in Defendants' continuous employ since January 4, 2007.

17. At all relevant times, Belmont was employed as a Residential Services Manager.

18. At all relevant times, Defendants compensated on an hourly basis for up to 40 hours worked per week.

19. Before the start of each biweekly pay period, Belmont would create a work schedule specifying the days and shifts for each staff member and herself.

20. This work schedule required at least one staff member or Belmont to be on duty whenever a resident was on site.

21. Belmont duly submitted this staffing schedule to Defendants in advance of the start of the pay period for review and approval.

22. Due to insufficient staffing of the home, planned absences by one or more staff members, or some combination of the two, this staffing schedule often demonstrated that Belmont was scheduled to work over 40 hours each week—typically 20 to 25 hours of overtime for each biweekly pay period.

23. Belmont would then submit to Defendants signed and verified time card sheets documenting her actual hours worked and those of her staff members.

24. The Signed and verified time card sheets typically reflected that the

hours Belmont actually worked were the hours established in advance of the pay period through the staffing schedule.

25. However, the pay check HOOINC issued to Belmont for any pay period never compensated her for more than 80 hours of regular hours worked in that two-week pay period.

26. If Belmont worked less than 80 hours in a biweekly period, her pay check for that pay period would reflect her actual hours worked and denote hours for holiday, vacation, or sick leave that equaled the gap between her actual hours worked and the 80 hours of that biweekly pay period.

27. At all times relevant, Belmont was compensated no more than $16 an hour for her employment with Defendants.

28. At all times relevant, Defendants knowingly suffered Belmont to work hours in excess of a forty-hour work week, but never compensated her for any of the hours she worked in excess of 40 hours per week.

29. Defendants were aware of their responsibility to compensate hourly employees for overtime, yet willfully abnegated their legal responsibility to pay Belmont and others similarly situated for their overtime hours.

30. Defendants instructed their Residential Services Managers like Plaintiff to organize their home's staffing as follows:

    a. Schedule each staff person for no more than 32 hours per week,

                even if that person was considered a full-time employee and desired more hours per week.

    b.    If a staff person was unable to report to work for a planned or unplanned reason, the Residential Services Manager was expected to swap around the scheduled hours for the week to cover that staff person's shift without resulting in anyone having overtime hours in that week.

    c.    If there was no way to avoid overtime hours—which would especially be the case with last-minute absences and absences at the end of the week—the Residential Services Manager was expected to take the overtime hours.

31.    Defendants demoted to regular staff positions those Residential Services Managers who were unable or unwilling to avoid and/or minimize paid overtime to their staff.

32.    Defendants preferred for Belmont and the other Residential Services Managers to work overtime, as Defendants did not acknowledge these employees' rights to overtime compensation.

### COUNT 1: VIOLATION OF THE FLSA FOR FAILURE TO PAY OVERTIME

33.    Plaintiff incorporates the above allegations by reference here.

34.    Plaintiff bring this case on behalf of herself and all other individuals

who are presently employed by or at any time between three years before the commencement of this action and the date of final judgment in this matter were employed by Defendants as Residential Service Managers.

35. Plaintiff brings this action under 29 U.S.C. § 216(b) of the FLSA, because Plaintiff and those similarly situated are all subject to Defendants' common practice of failing to compensate them for overtime they were knowingly suffered to work, despite otherwise treating them as hourly employees not subject to the administrative or executive exemptions of the FLSA.

36. Neither Plaintiff nor the others similarly situated performed their duties in Defendants' clientele's "private residences"; therefore, Defendants are not entitled to deny them overtime pay under the companionship exemption, or any other exemption.

37. Defendants' violation of the FLSA's overtime requirements was willful, as Defendants are aware that Residential Service Managers regularly work in excess of 40 hours per week and approve these schedules before work commences.

38. Plaintiff and those similarly situated who opt into this litigation are entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following:

A. Certification of the described class under the FLSA;
B. An award of overtime wages under the FLSA;
C. An award of liquidated damages under the FLSA;
D. A declaratory judgment that the practices complained of are unlawful under the FLSA;
E. Interest and costs;
F. Attorneys' fees under the FLSA; and
G. Any other relief the Court deems appropriate.

Respectfully submitted by:

**PITT, McGEHEE, PALMER, & RIVERS, PC**

By: /s/ Robin B. Wagner (P79408)_____
Megan A. Bonanni (P52079)
Robin B. Wagner (P79408)
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated:   March 14, 2018

## **DEMAND FOR JURY BY TRIAL**

Plaintiff, by and through her attorneys, Pitt McGehee Palmer & Rivers, P.C., hereby demand a trial by jury of all issues in the within cause of action.

Respectfully submitted by:

**PITT, McGEHEE, PALMER, & RIVERS, PC**

By: /s/ Robin B. Wagner (P79408)
Megan A. Bonanni (P52079)
Robin B. Wagner (P79408)
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated:   March 14, 2018