# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Susan Belmont, on behalf of herself
and others similarly situated,

                                   Case No. 18-10854

Plaintiff,                      Hon. Linda V. Parker

                                   Magistrate Judge Mona K. Majzoub

v.

Homes of Opportunity, Inc. and
Lawrence A. Maniaci,

Defendants.

_____

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND ENTRY OF STIPULATED ORDER OF DISMISSAL

For the reasons set forth in the brief filed herewith, Plaintiffs and Defendants move for approval of the parties' settlement agreements and for entry of a stipulated order of dismissal, copies of which are attached.

By: */s/Megan A. Bonanni P52079*      By:*/s/ Christian Lobb (w/ consent)*
Megan A. Bonanni (P52079)          Christian Lobb (P63339)
Robin B. Wagner (P79408)            Bator Legal, P.C.
PITT, MCGEHEE, PALMER AND RIVERS, P.C.   Attorney for Defendants
Attorney for Plaintiffs               400 W. Maple Road
117 West Fourth Street, Suite 200       Birmingham, MI 48009
Royal Oak, Michigan 48067            248-642-7844
(248) 398-9800                    chris@batorlegal.com
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated: November 5, 2018

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Susan Belmont, on behalf of herself
and others similarly situated,

                                    Case No. 18-10854

     Plaintiff,                      Hon. Linda V. Parker

                                      Magistrate Judge Mona K. Majzoub
v.

Homes of Opportunity, Inc. and
Lawrence A. Maniaci,

     Defendants.

_____

## BRIEF IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND ENTRY OF STIPULATED ORDER OF DISMISSAL

### I.     Introduction

      Pursuant to 29 U.S.C. §216(b) Plaintiffs move for an order granting approval to the settlement described in the Settlement Agreement, attached hereto as ***Exhibit 1*** (hereinafter referred to as "Settlement Agreement") and Incentive Award to the Class Representative. The motion is supported by the attached Memorandum of Law and attached exhibits.

### II.    Standard of Review

      The parties' settlement agreement encompasses wage and hour laws and collective action claims under the Fair Labor Standards Act ("FLSA"). Insofar as the Parties propose to settle claims of the opt-in FLSA plaintiffs, the proposed

settlement agreement is subject to approval by the Court under 29 U.S.C. § 216(b). *Byers v. Care Transp., Inc*., 2017 U.S. Dist. LEXIS 25233, \*2 (E.D. Mich. Feb. 23, 2017) (J. Murphy, III) (citing Lynn's Food Stores, Inc. v. U.S.¸ 679 F.2d 1350, 1353 (11th Cir. 1982)). The proposed class settlement is also subject to approval by the Court under Fed. R. Civ. P. 23. *Clevenger v. JMC Mech., Inc.*, No. 15-CV-2639, 2015 WL 12681645, at \*1 (S.D. Ohio Sept. 25, 2015(citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007)). Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, \*2 (internal citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

## III.   The Proposed Settlement Agreement is Reasonable and Fair

In determining whether a proposed class action settlement is fair, reasonable, and adequate, the Sixth Circuit has identified seven factors that may aid the Court in its determination:

(1) the risk of fraud or collusion;

3

 (2) the complexity, expense, and likely duration of the litigation;
 (3) the amount of discovery engaged in by the parties;
 (4) the likelihood of success on the merits;
 (5) the opinions of class counsel and class representatives;
 (6) the reaction of absent class members; and
 (7) the public interest.

*Byers v. Care Transp., Inc.*, 2017 U.S. Dist. LEXIS 25233 (E.D. Mich. Feb. 23, 2017) at \*2; *Ross v. Jack Rabbit Servs., LLC*, 2016 U.S. Dist. LEXIS 1732, (W.D. Ky. Dec. 15, 2016) at\*8-13 (citing *Int'l Union*, 497 F.3d at 631). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, \*31 (N.D. Ohio Aug. 22, 2008) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir.1992)). On balance, the above factors strongly weigh in favor of the Court granting final approval of the parties' settlement.

  This FLSA collective action was originally filed on March 14, 2018. (Dkt. 1.) The Complaint set forth a detailed recitation of factual and legal allegations pertaining to FLSA claims and a sound basis for collective action certification under Section 216(b). The parties stipulated to conditional certification on May 15, 2018. (Dkt. 13.)

  Prior to engaging in full-blown discovery, counsel for the respective parties began discussing the merits of the case and certification difficulties for each side.

The Parties agreed to exchange extensive discovery documents and submitted the case to a settlement conference with the Hon. Mona K. Majzoub, United States Magistrate Judge, on October 17, 2018.

After a full review of this information and open and full debate over the legal and factual issues, the Parties, who have been represented by counsel at all times, agreed that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues. **The amount of each plaintiff's settlement represents more than the unpaid overtime each is owed as documented by defendants.** This information also reflects both parties collective desire to avoid costly and protracted litigation, along with the understanding that Plaintiffs' recovery might ultimately not be far greater than Defendants' offer, as well as the risk to Plaintiffs that they might not ultimately prevail.

The negotiations leading to this settlement were adversarial, non-collusive, and certainly done at arms' length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognized the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agreed to be bound by the settlement agreements which they now ask this Court.

The Parties have conditioned the overall settlement agreements upon the Court's approval of all their terms.

### A.      The Absence of Fraud or Collusion

In the instant case, there is a *bona fide* dispute over whether Defendants violated the FLSA. Plaintiffs allege Defendants violated the FLSA because they failed to pay Plaintiffs overtime and cannot satisfy the salary-basis prong of the test for the managerial exemption from the FLSA overtime mandate. Defendants, on the other hand, assert that Plaintiffs' allegations are without merit because Plaintiffs were properly classified as managerial employees.

Based on the amount to be paid to Plaintiffs in this settlement, it is clear there was no fraud or collusion. The settlement will provide Plaintiffs with substantial amounts and will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. The Parties exchanged hundreds of documents and other data to educate each other about their position. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### B.      Complexity, Expense and Likely Duration of the Litigation

The complexity, expense, and length of continued litigation militate in favor of this settlement. Both sides acknowledge that the Parties' respective positions

were substantially complicated and uncertain due to numerous factual disputes and legal theories. Should this matter continue, the Court will be required to rule on discovery motions regarding the medical records of Defendants' clients and substantial investigative efforts would be required to documents Plaintiffs' true hours of employment.

If Plaintiffs ultimately prevailed at trial, Defendants would be faced with the prospect of a verdict against it and the obligation to pay Plaintiffs' attorneys' fees and costs anticipated to be in excess of $100,000. If Defendants ultimately prevailed, Plaintiffs face dismissal of their claims and no recovery. The Parties agree that either outcome is possible in this litigation. For these reasons, this settlement is a reasonable means for the Parties to minimize future risks and litigation costs.

### C.      Amount of Discovery Engaged in by the Parties

Formal discovery has not commenced in this case. However, as part of their settlement discussions, the Parties exchanged numerous documents and other data relevant to Defendants' pay practices, pay records, and each Plaintiff's work schedules, time cards and paystubs. The Parties reviewed this information, shared it with their respective clients, had discussions about it, and ultimately used it to evaluate the merits of their respective claims and defenses. One of the driving factors in this settlement was the desire to settle the case prior to incurring

further attorneys' fees and costs associated with conducting formal discovery.

### D.   The Likelihood of Success on the Merits

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendants deny, that they are owed compensation due to Defendants' alleged violations of the FLSA. The range of possible recovery by Plaintiffs is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both Parties, the specific amount of their recovery is uncertain. Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### E.   The Opinions of Plaintiff's Counsel and the Lead Plaintiff

The class has been conditionally certified and following the notice period, four individuals opted in to the litigation. Plaintiffs' counsel, the named Plaintiff, and the four opt-ins share the opinion that this proposed settlement is a fair and reasonable compromise of the disputed issues. This is evidenced by Plaintiffs' and their counsel's signatures on the settlement agreements.

### F.   The Public Interest

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard

wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945)(*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)). Additionally, the terms of the settlement agreement are not subject to a confidentiality provision, which furthers a central purpose of the FLSA to "to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests *collectively* . . . and to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of "overwork" as well as "underpay."'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Trans. Co. v. Missel*, 316 U.S. 572, 578 (1942))(emphasis in original). Moreover, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740 (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). *See also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (holding in part that confidentiality of FLSA settlement agreements run counter to the purposes of this "uniquely protective statute.")

## G. The Attorney's Fees and Costs are Appropriate and Reasonable

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Here, Plaintiffs' counsel's attorneys' fees and costs are reasonable given the complex legal theories presented in the case and the amount of resources expended to investigate, research, and analyze Plaintiffs' claims. Specifically, Plaintiffs' counsel spent a significant amount of time speaking with potential plaintiffs and identifying their claims. Plaintiffs filed a FLSA Complaint. (Dkt. 1). Thereafter, Plaintiffs' counsel prepared for the conditional certification process, filed conditional certification briefing, sent notice, interviewed and processed opt-ins investigated other potential claims and filed consent forms, engaged in an extensive damage model analysis, engaged in a significantly demanding settlement negotiation and facilitation process, reviewed hundreds of documents related to the claims and defenses in this case, negotiated the settlement agreements, and filed the instant motion. These activities are necessarily time consuming.

Courts generally have discretion to apply either the percentage of the fund or the lodestar method in calculating fee awards. *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993); *In re Cardizem*, 218 F.R.D. at 532. The Sixth Circuit has observed a "trend towards adoption of a percentage of the fund method in [common fund] cases." *Rawlings*, 9 F.3d at 515; *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005). When damages for individual class members are relatively modest, the percentage of the fund recovery method is favored because it rewards counsel for taking on a case which might not otherwise be economically feasible. *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. Oct. 26, 2007). In addition to providing an incentive to obtain optimal settlements as efficiently as is reasonably possible, *see e.g., Report of the Third Circuit Task Force on Court Awarded Fees* ("Task Force Report"), 108 F.R.D. 237, 248 (1985), the percentage method is preferred because of its simplicity. Use of the percentage method can avoid the excessive "time-consum[ption] of scarce judicial resources" as well as incentives for overbilling that might accompany a "loadstar" analysis.[1] *Rawlings*, 9 F.3d at 516;

---

[1]      Some courts use the lodestar method as a cross-check to ensure the fee is not excessive. *Manual For Complex Litigation*, 4th, §14.121, n. 504.

*Manual For Complex Litigation*, 4th, §14.121.[2]

When using the percentage of the fund method, Sixth Circuit award attorneys' fees between 20% and 50% of the settlement fund. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, *16 (E.D. Mich. 1996) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp. 148, 150 (S.D. Ohio 1986); *Wise v. Popoff,* 835 F. Supp. 977, 980 (E.D. Mich. 1993); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). *See*, *e.g.*, *Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*, No. 13-CV-14464, 2017 WL 655622, at *13 (E.D. Mich. Feb. 17, 2017) (28% of settlement fund); *Cason-Merenda v. VHS of Michigan, Inc.*, No. 206CV15601GERDAS, 2016 WL 944901, at *2 (E.D. Mich. Jan. 29, 2016) (roughly 20% of settlement fund); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013) (30% of $3M settlement fund); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *14 (E.D.

---

[2]     Historically, attorney fees were awarded from a common fund based on a percentage of that fund. After a period of experimentation with the lodestar method (based on the number of hours reasonably expended multiplied by the applicable market rate for the lawyer's services), the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.

Mich. May 20, 2013) (one-third of $1.4M settlement); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (citing cases to justify award of roughly 30%); *Bessey*, 2007 WL 3173972 at *4 (33% of $668K settlement fund); *In re Telectronics,* 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund").

As made clear by the United States Supreme Court in *Boeing v. Van Gemert*, the benefit fund from which fees can be calculated when using the percentage method includes the entire pool of benefits created, including unclaimed portions of the settlement fund. 444 U.S. 472 (1980). As the Supreme Court explained:

> Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.
>
> * * *
>
> To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. ***Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.***
>
> * * *
>
> ***The members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery.***

> Any right that Boeing may establish to the return of money eventually unclaimed is contingent on the failure of absentee class members to exercise their present rights of possession.

*Boeing*, 444 U.S. at 479-482 (emphasis added); *see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016), cert. denied sub nom. *Blackman v. Gascho*, 137 S. Ct. 1065 (2017), and cert. denied sub nom. *Zik v. Gascho*, 137 S. Ct. 1065 (2017); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33.3% of total amount made available to class and determining that attorneys' fees may be determined based on total fund, not just actual payout to the class); *David v. America Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, *25-26 n.14 (S.D. Fla. April 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant); *In re Cardizem*, 218 F.R.D. at 532; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009).

Like other Circuits, the Sixth Circuit follows the same rule. *Moulton, et al. v. United States Steel Corp.* 581 F.3d 344, 352 (6th Cir 2009) (Finding error in the objectors focus on the amount *claimed* rather than the amount *allocated* when deciding the reasonableness of a 30% fee award). As the Ninth Circuit further observed, "[t]here is nothing unfair about contingency enhancements in common fund cases because of the equitable notion that those who benefit from the creation

of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power*, 19 F.3d at 1300.

However, fees and costs awards in a class action are restricted to the counsel whose work actually produces a beneficial result for the class. *See* Fed. R. Civ. P. 23, Committee Notes to Subdivision (h); *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 565 (D.N.J. 2003)).

The $ 18,682.93 fee sought by Class Counsel here is approximately 33% of the total $57,500 settlement, less costs of $651.19 and the incentive award of $800. That fee award is fair and reasonable when compared to fee awards in similar cases within the Sixth Circuit. *Moulton*, 581 F.3d at 352 (finding that a fee award of 30% plus an award of costs was reasonable on its face). Fee awards in this Circuit are typically 20-50% of the fund. *In re Rio Hair, supra; In re Cincinnati Gas & Electric Co. Securities Litigation, supra; Wise, supra; and In re Dun & Bradstreet Credit Services Customer Litigation, supra*; *Atkinson v. TeleTech Holdings, Inc.*, Case No. 14-cv-00253 (S.D. Ohio) (awarding class counsel fees and costs of 33.3% of total settlement in wage-and-hour class and collective action); *Bessey v. Packerland Plainwell, Inc.*, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. October 26, 2007) (approving attorneys' fees of 33% in wage-and-hour class and collective action);

*Rotuna v. W. Customer Mgmt. Grp.*, LLC, 2010 U.S. Dist. LEXIS 58912, *19-20 (N.D. Ohio June 15, 2010) (approving attorneys' fees of 33% of the settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving attorneys' fees of 34% of the settlement amount in wage-and-hour class and collective action, and noting that it is within the 20% to 50% range of reasonableness). Across the country, fee awards range between 25-30% of the common fund. *Manual Complex Lit.*, § 14.121 (4th ed.) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."). And this Court recently found a 1/3 fee was likely to be reasonable and cited a recent study that confirmed average fees are 27%. *Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699, at *28 (E.D. Mich. Jan. 23, 2017) (citing *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811, 839 (2010) (providing that for settlements in the range of $4.45 to $7 million, the average attorneys' fees award over all class-action settlements in 2006 and 2007 was 27.4%).

## IV.   The Requested Incentive Award is Appropriate

As provided for in the settlement agreement, and set forth in the notice to class members, the class representatives seek "incentive" payments totaling $800 (***Exhibit 1***, Settlement Agreement at Section 9.5).

"[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of Class Membership alone." *Dallas v. Alcatel-Lucent USA, Inc.,* 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013) *accord Date v. Sony Elecs., Inc.,* 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013) (awarding service award in common fund case for, *inter alia*, Collective representative's "responding to discovery and sitting for his deposition") (citation omitted); *see also Griffin v. Flagstar Bancorp. Inc.*, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"). Courts acknowledge that named plaintiffs in collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See e.g., In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459, *48 (E.D. Mich. Nov. 13, 2012) (service awards are "well deserved" when Collective representative spent "time and effort . . . all to the general benefit of the Collective") (citing *In re Cardizem*, 218 F.R.D. at 536 (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to

the prosecution of this matter for the benefit of absent Class Members")); *Aros v. United Rentals, Inc.,* 2011 U.S. Dist. LEXIS 125870, *3 (D. Conn. Oct. 31, 2011); *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* 2010 U.S. Dist. LEXIS 12762, *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for Collective representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.,* 2005 U.S. Dist. LEXIS 709, *7 (S.D.N.Y. Jan. 18, 2005) ("in employment litigation, the plaintiff is often a former or current employee of the Defendants, and thus, by lending his name to the litigation, he has, for the benefit of the Collective as a whole, undertaken the risk of adverse actions by the employer or co- workers") (internal quotes and citation omitted).

Incentive awards are within the discretion of the court. *See Dallas*, 2013 U.S. Dist. LEXIS 71204 at *10-11; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in Collective action cases and are within the discretion of the court"; Incentive "awards are particularly appropriate in the employment context."). In examining the reasonableness of incentive awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class members, and whether those actions resulted in substantial benefit to class members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See e.g., Bert v. AK*

*Steel Corp.*, 2008 U.S. Dist. LEXIS 111711, *10 (S.D. Ohio Oct. 23, 2008); *see also*

*Dallas*, 2013 U.S. Dist. LEXIS 71204 at *10 (in common fund cases, class

representatives "deserve compensation above and beyond amounts to which they are

entitled to by virtue of Class Membership alone"); *Lonardo v. Travelers Indem. Co.*,

706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same).

Here, Plaintiffs satisfy all three factors.  First, Plaintiff Belmont took

substantial actions to protect the interests of putative class members, and those

actions resulted in a substantial benefit to those potential collective/class

members.  She engaged in substantial pre-suit investigation, strategy meetings and

provided documents crucial to establishing Plaintiffs' claims. *Frank*, 228 F.R.D. at

187 (recognizing the important role that Collective representatives play as the

"primary source of information concerning the claims[,]" including by responding

to counsel's questions and reviewing documents).  Additionally, the amount of

the requested service award is reasonable and consistent with awards that have

been granted in employment class/collective actions within the Sixth Circuit. *See*

*Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio

July 11, 2014) ("The modest Collective representative award requests of $10,000

to each of the two Collective Representatives have been tailored to compensate

each Collective Representative  in proportion to his or her time and effort in

prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 U.S. Dist.

LEXIS 111711, at *10 . award of $10,000 to five Collective representatives was

"rather modest" and "fair and reasonable" in employment discrimination case). In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here.

In this case, the incentive award sought is appropriate. The class representative Susan Belmont helped Class Counsel gather the facts necessary for the prosecution of the case. She took on the risk of retaliation. She was kept abreast of the proceedings and assisted counsel in making important decisions. She assumed certain risks in filing litigation against well-armed corporate defendants, such as cost-shifting.

## CONCLUSION

Both sides compromised on key claims and defenses and the proposed settlement represents a true compromise as to damages and the available evidence. This settlement represents an arm's-length negotiation by counsel. It provides relief to Plaintiffs and eliminates the inherent risks both sides would bear if this litigation were to continue. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute, approve the settlement and enter the proposed stipulated order dismissing this case.

By: */s/ Megan A. Bonanni*                      By:*/s/ Christian Lobb (w/ consent)*
Megan A. Bonanni (P52079)               Christian Lobb (P63339)
Robin B. Wagner (P79408)                  BATOR LEGAL P.C.
PITT, MCGEHEE, PALMER AND RIVERS, P.C.   Attorney for Defendants
Attorney for Plaintiffs                          400 W. Maple Road
117 West Fourth Street, Suite 200          Birmingham, MI 48009
Royal Oak, Michigan 48067                 248-642-7844
(248) 398-9800                                  chris@batorlegal.com
mbonanni@pittlawpc.com
rwagner@pittlawpc.com

Dated: November 5, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on November 5, 2018.

Signature:  _/s/ Kathy Prochaska
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
kprochaska@pittlawpc.com